**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHERYL A. SLATER,

 Plaintiff,

   v.

SUSQUEHANNA COUNTY, et al,

 Defendants.

CIVIL ACTION NO. 3:07-CV-2304

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

 Presently before the Court is Defendants Jack McGrail and Teamsters Local 229's Motion to Dismiss Plaintiff's Second Amended Complaint or for Summary Judgment. (Doc. 47.)

 This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over federal law actions arising under 42 U.S.C. §§ 1983 and 1985 ("federal question jurisdiction"). This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over state law claims arising out of the same common nucleus of operative fact as Plaintiff's federal law claims ("supplemental jurisdiction").

## BACKGROUND

 The facts alleged in Plaintiff's Amended Complaint are as follows. The Plaintiff in this matter is Cheryl A. Slater, a former Susquehanna County correctional officer at Susquehanna County Prison. (Second Am. Compl. ¶ 14, Doc. 46.) Ms. Slater is a white female, who, at the time of her last employment by Susquehanna County, was fifty-seven (57) years old. (*Id*. ¶¶ 13-14.) Moving Defendants are Teamsters Local 229 ("Defendant

Union") and Jack McGrail, a business representative for Defendant Union.  (*Id*. ¶¶ 11-12, 18.)  The following parties are also Defendants: Susquehanna County ("Defendant County"), a Pennsylvania municipality; Susquehanna County Correctional Facility ("Defendant Facility"), a subdivision of Susquehanna County; Susquehanna County Prison Board ("Defendant Board"), a group of adult individuals who administer Defendant Facility; Donald Steward, a prison warden at Defendant Facility; and William Brennan, another warden at Defendant Facility.  (*Id*. ¶¶ 6-10, 17.)

As alleged in her amended complaint, Plaintiff and other female correctional officers over the age of fifty (50) have been harassed by supervisors and other officers, including a group of co-workers called the "Secret Sisters," who were aided and abetted by prison wardens and Defendant McGrail.  (*Id*. ¶ 18.)  The harassment has existed since her employment with the prison.  (*Id*.)  Plaintiff complained of discrimination to Defendants Board, Brennan, and Stewart, but they failed to respond other than to accuse Plaintiff of wrongdoing in an attempt to discredit and fire her.  (*Id*. ¶ 20.)  Similar complaints to Defendant Union made through its business representative were ignored.  (*Id*. ¶ 21.) Defendants County and Board, despite being aware of their employees' improper conduct, failed to: (1) supervise and train their employees; (2) implement policies to stop said employee conduct; and (3) investigate or ameliorate discriminatory practices by their employees.  (*Id*. ¶ 16.) Plaintiff alleges she was subjected to a hostile work environment due to her age and gender.  (*Id*. ¶ 19.)

In addition, due to the gross negligence of other correctional officers, a female inmate died on April 2, 2004.  (*Id*. ¶ 23.)  Plaintiff was accused of being an informant to an attorney

on behalf of the deceased prisoner and was interviewed by a private investigator, during which time Defendant Brennan eavesdropped on the conversation.   (*Id*. ¶¶ 24-26.) Defendants attempted to intimidate and silence Plaintiff, believing that she had information concerning the death of the prisoner. (*Id*. ¶ 34.) Defendants Brennan and Stewart solicited false write-ups from the "Secret Sisters," and Defendants began to manufacture and blame Plaintiff for violations of prison policy.   (*Id*. ¶¶ 22, 27.)   As a result of Plaintiff making Defendant Board and Union aware of the problems at the prison, Defendant Stewart suspended and then terminated Plaintiff. (*Id*. ¶¶ 28-29.)  Plaintiff filed two grievances with Defendant Union—one for her suspension and one for her termination—which she alleges were not handled in a timely fashion. (*Id*. ¶¶ 30-31.)

Plaintiff claims that she was discriminated against in the terms and conditions of her employment due to her gender and age, that she was retaliated against for exercising her First Amendment rights, and that she was not afforded procedural due process and equal protection under the Fourteenth Amendment. (*Id*. ¶¶ 32-33.)

Plaintiff filed her Complaint on December 21, 2007. (Compl., Doc. 1.) Plaintiff filed an Amended Complaint on March 28, 2008. (Am. Compl., Doc. 26.)  She filed a Second Amended Complaint on August 8, 2008. (Second Am. Compl., Doc. 46.) Her most current amended complaint raises the following Counts against all Defendants: Count I alleges violation of 42 U.S.C. § 1983; Count II alleges violation of 42 U.S.C. § 1985; Count III alleges discrimination because of age; Count IV alleges violation of Title VII of the Civil Rights Act of 1964; Count V alleges a civil conspiracy under Pennsylvania law; Count VI alleges intentional infliction of emotional distress under Pennsylvania law; and Count VII alleges

3

wrongful discharge under Pennsylvania law; Count VIII alleges violation of the Pennsylvania Human Relations Act.

Moving Defendants McGrail and Union filed the present motion to dismiss or for summary judgment on August 27, 2008.  (Doc. 47.) This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

### I.    Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1960 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc.*

4

*V. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus.. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id*. The court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaints "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *Id*. The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

## II.    Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or

5

nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in

6

the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.    Motion to Dismiss or Summary Judgment

Defendants Union and McGrail move to dismiss or, in the alternative, for summary

judgment as to each of Plaintiff's Counts.  (Doc. 47.)  Defendants support their motion for

summary judgment in compliance with the Middle District of Pennsylvania Local Rule 56.1,

requiring movants to file a statement of material facts to which they contend there is no

genuine issue to be tried, including references to the parts of the record supporting each

statement.  (Doc. 48.)  Plaintiff filed a counter-statement in response.[1]  (Attach. 1, Doc. 60.)

While summary judgment may be appropriately considered, all but two of Plaintiff's claims

may be determined on the pleadings under the motion to dismiss standard.  The Court need

look beyond the pleadings and employ the summary judgment standard only as to Plaintiff's

claims for gender and age discrimination based on a hostile work environment.  Supporting

and opposing record evidence will be discussed in the analysis of those claims.

### II.    Count I - Section 1983

In order to succeed on a § 1983 claim, a plaintiff must prove: "(1) that he was deprived

---

[1]    Plaintiff's counter-statement was filed as an attachment to her brief in opposition to Defendants' motion rather than as a separate document as required by Local Rule 56.1.  The Court will nonetheless consider the statement.

of his rights, privileges or immunities secured by the Constitution or laws of the United States due to (2) the conduct of a person acting under color of state law." *Gilbert v. Feld*, 788 F. Supp. 854, 859 (E.D. Pa. 1992) (citing *Cohen v. Philadelphia*, 736, F.2d 81, 83 (3d Cir. 1984). In order to satisfy the second prong, a defendant does not have to be a state official, but can also be held liable as a state actor. *Id*. Plaintiff's amended complaint alleges that Defendant Union is a union incorporated in the Commonwealth of Pennsylvania, and that Jack McGrail is the business representative for Teamsters Local 229, which is the union for the prison's corrections officers. (*See* Second Am. Compl.¶¶ 11, 18.) It is clear that Defendant McGrail, as a private person, was not acting under the color of state law for the purposes of §1983.

Other courts in this circuit have considered the role of unions as state actors. The U.S. District Court for the Eastern District of Pennsylvania case of *Talley v. Feldman*, 941 F. Supp. 501, 512 (E.D. Pa. 1996) held that:

> "[l]abor unions have been traditionally regarded as private entities, despite the imposition of regulatory provisions upon them." Therefore, a labor union may not be sued for constitutional violations. If, however, a plaintiff demonstrates that the government significantly encouraged the labor union to engage in the constitutional violations, he may be able to maintain a suit against the union under the First and Fifth Amendments.

*Id.* (quoting *Driscoll v. Int'l Union of Operating Eng'rs, Local 139*, 484 F.2d 682, 690 n. 21 (7th Cir.1973), *cert. denied*, 415 U.S. 960 (1974)). In this case, there is no allegation that Defendant Union was encouraged by county actors. The actions alleged are private actions. Therefore, Defendants' motion to dismiss Count I of the Amended Complaint for violations of § 1983, against Defendants McGrail and Union will be granted.

### III.    Count II - Section 1985

In Count II, Plaintiff alleges that Defendants McGrail and Union conspired as per 42 U.S.C. § 1985 to deprive the Plaintiff of her rights under the First Amendment to the U.S. Constitution.  Section 1985(3) provides, in part:

> If two or more persons in any State or Territory conspire ..., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  The U.S. Court of Appeals for the Third Circuit has held that for a plaintiff to properly allege a violation of Section 1985(3), a plaintiff must plead the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Moreover, a plaintiff must allege specific facts in order to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972).  "[O]nly allegations which are

particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003).

In this case, Plaintiff alleges that she is a member of a class based on her gender.[2] She further alleges that Defendants conspired to deprive her of her First Amendment rights.[3] According to Plaintiff, prison officials believed she was passing information to the attorney of a prisoner who had died in the prison and also alleges that she "made the Prison Board and the Union aware of the conduct which jeopardized the safety, security and physical integrity of the Prison." (Second Am. Compl. ¶¶ 24, 28.) Because of their alleged perception of her as a "whistle-blower," Plaintiff claims that Defendants began a campaign of manufacturing reasons to terminate her. (*Id.* ¶ 27.) As a result, Plaintiff was first suspended, then ultimately terminated. (*Id.* ¶¶ 27-29.) She filed grievances as to the suspension and termination with Teamsters Local 229, which she alleges were not handled in a timely fashion. (*Id.* ¶¶ 30-31.)

---

[2]     In *Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1242-44 (3d Cir.1978), *overruled on other grounds, Great Am. Sav. & Loan Ass'n. v. Novotny*, 442 U.S. 366 (1979),  the Third Circuit Court of Appeals concluded that conspiracies resulting from gender-based animus were actionable under § 1985(3).

[3]     Plaintiff also mentions age and gender discrimination in this Count, but states in her brief in opposition to Defendants' motion that her § 1985 claim is not based on alleged constitutional violations, not age and gender discrimination.  (Pl.'s Br. in Opp'n 8, Doc. 60.)  Moreover, the Court notes that a § 1985(3) claim may not be based on a violation of Title VII or the ADEA.  *See Tyrell v. City of Scranton*, 134 F.Supp. 2d 373, 387 n. 10 (M.D. Pa. 2001).

These allegations are insufficient to plead a § 1985(3) claim against Defendants McGrail and Union.  First, other than a conclusory assertion that she was subjected to invidious discriminatory animus, Plaintiff's allegations fail to reveal how the alleged conspiracy was motivated by gender animus.   On the contrary, she indicates it was motivated by prison personnel's perception of her as a "whistle-blower."  Second, she alleges no specific facts indicating a mutual understanding between the union Defendants and prison officials to achieve a deprivation of her First Amendment rights.   Though she states Defendants did not handle her grievances in a timely fashion, this does not indicate the existence of a conspiracy or an invidious, intentional purpose to discriminate between classes or individuals.   As Plaintiff has failed to plead a § 1985(3) claim, Count II will be dismissed as to Defendants McGrail and Union.

**IV.    Count IV - Gender Discrimination**

<u>A.</u>   <u>Defendant McGrail</u>

Count IV of Plaintiff's amended complaint is a claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII").  Plaintiff alleges that, because of her gender, Defendants retaliated against her, terminated her, and created a hostile work environment.  The Third Circuit Court of Appeal's disposition on individual liability under Title VII is clear—Congress did not intend to enact individual liability with this statute.   *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir 1997) (citing *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3d Cir. 1996)).  Therefore, because Defendant McGrail is sued as an individual, he cannot be sued for gender discrimination under Title VII, and Count IV will be dismissed against him.

B.      Teamsters Local 229

Count IV also brings a claim for gender discrimination against Defendant Union, alleging retaliation, discriminatory termination, and a hostile work environment.

1.      *Retaliation*

Plaintiff alleges that all Defendants jointly retaliated against her for exercising her First Amendment rights and for engaging in protected Equal Employment Opportunity Commission ("EEOC") activity.  Section 704(a) of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer (or labor organization) took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

Plaintiff's allegations fail to establish a *prima facie* case for several reasons.  First, she does not allege protected activity under Title VII based on the exercise of her First Amendment rights.  She alleges she was retaliated against for reporting conduct that threatened the safety of prisoners and prison employees.  However, § 704(a) protects only opposition to acts of discrimination made unlawful under Title VII; it does not protect speech

12

on topics unrelated to employment discrimination.  *See, e.g., Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125 (2d Cir.), *cert. denied*, 528 U.S. 964 (1999) (plaintiff police officer's report of fellow officers' discriminatory treatment of minorities not protected activity under Title VII); *Rossell v. County Bank*, No. 05-cv-0195, 2006 U.S. Dist. LEXIS 12900 (D. Del. Mar. 27, 2006) (plaintiff employee did not state Title VII retaliation claim where she alleged she was terminated for refusal to discriminate against minority customers).

Second, she cannot establish a *prima facie* case based on alleged participation in EEOC proceedings.  Participation in the EEOC process is protected activity under § 704(a). However, Plaintiff's amended complaint is devoid of any indication of when charges were filed with the EEOC or the Pennsylvania Human Relations Commission ("PHRC") or any indication that Defendants knew about such filing.[4]  Plaintiff asserts that Defendants engaged in a campaign to suspend and ultimately terminate her, but gives no indication of a causal connection between these adverse actions and Plaintiff's participation in EEOC proceedings.

Finally, Plaintiff cannot establish a *prima facie* retaliation case as to Defendant Union in particular because the adverse actions of which she complains—her suspension and termination—were actions of Plaintiff's employer.  Section 704(a) provides that a labor

---

[4]     Plaintiff makes only a few references to the EEOC in her amended complaint.  To show exhaustion of administrative remedies, Plaintiff alleges she "timely filed" a complaint with the EEOC and PHRC.  (Second Am. Compl. ¶ 4.)  She then mentions it again in her age and gender discrimination Counts, where she alleges "Defendants had retaliated against [Plaintiff] for having engaged in protected EEO activity" (Count III) and "Plaintiff was discriminated against ... in retaliation for having engaged in prior protected EEO activity" (Count IV).  (*Id*. ¶¶ 47, 54.)  The Court understands "EEO activity" as referring to the filing of charges with the EEOC.

organization may be liable for its own acts of retaliatory discrimination towards its membership, but does not by its terms impose liability on a labor organization for the retaliation of an employer.

>    2.    *Discriminatory Termination*

Defendant Union cannot be liable for Plaintiff's alleged discriminatory termination because she was terminated by her employer, not by the union.  Sections 703(a) and (c) of Title VII respectively set out distinct unlawful employer practices and labor organization practices,[5] reflecting their different roles in the workplace.  As the Seventh Circuit Court of

---

[5] Section 703(a), entitled "Employer practices," provides:

It shall be an unlawful employment practice for an employer--

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

Section 703(c), entitled "Labor organization practices," provides:

It shall be an unlawful employment practice for a labor organization--

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment

14

Appeals has observed:

> The duties of nondiscrimination imposed by sections 703(a) and
> (c) have reference to the respective roles of company and union
> in the workplace.   The company, not the union, controls the
> workplace.... The union is not the company, but the workers'
> agent in dealing with the company.   If it discriminates in the
> performance of its agency function, it violates Title VII, but not
> otherwise.

*EEOC v. Pipefitters Ass'n Local Union*, 334 F.3d 656, 659 (7th Cir. 2003).  Defendant Union

does not, therefore, share any liability arising from the actions of employer Defendants in

terminating Plaintiff.

>    3.    *Hostile Work Environment*

A union may be liable under Title VII for creating a hostile work environment.  *Durko*

*v. OI-NEG TV Prods., Inc.*, 870 F. Supp. 1268, 1277 (M.D. Pa. 1994), *aff'd*, 103 F.3d 112 (3d

Cir. 1996).  To hold a union liable, a plaintiff must show that: (1) she was subjected to a

hostile work environment; (2) she requested action on the part of the union; and (3) the union

ignored her request for action.  *Boyer v. Johnson Matthey, Inc.*, No. 02-cv-8382, 2005 U.S.

Dist. LEXIS 171, at *71 (E.D. Pa. Jan. 6, 2005); *Snyder v. Teamsters Local No. 249*, No. 02-

cv-0216, 2005 U.S. Dist. LEXIS 19055, at *10 (W.D. Pa. Sept. 2, 2005).  As mentioned

above, the Court must look outside the pleadings to determine this claim and will therefore

_____

> any individual, in any way which would deprive or tend to deprive
> any individual of employment opportunities, or would limit such
> employment opportunities or otherwise adversely affect his status
> as an employee or as an applicant for employment, because of
> such individual's race, color, religion, sex, or national origin; or

> (3) to cause or attempt to cause an employer to discriminate
> against an individual in violation of this section.

42 U.S.C. § 2000e-2(c).

employ the summary judgment standard.

Assuming without deciding that Plaintiff can show she was subjected to a hostile work environment, she nonetheless fails to establish a dispute of material fact that she requested action on part of the union and was ignored.  In their statement of undisputed material facts, Defendants Union and McGrail assert that "Plaintiff did not file a grievance alleging she had been subjected to a hostile work environment and discriminatory conduct by her co-workers nor did Defendants have knowledge of any such 'hostile work environment.'"  (Defs.' Statement of Material Facts ¶ 27, Doc. 48.)  In support of this assertion, Defendants cite to their Answer No. 4 to Plaintiff's First Set of Interrogatories.  That interrogatory and answer state as follows:

> 4.   **State** whether Defendants filed a grievance on Plaintiff's behalf due to the hostile work environment and discriminatory conduct she had been subjected to by her co-workers.
>
> **Answer:**   **No.  Plaintiff was not subjected to a hostile work environment or discriminatory conduct by her co-workers. Further, under Article 20, Sections 20.1 and 20.2 [of the Collective Bargaining Agreement], it is the responsibility of the employee "affected" to begin the grievance process either directly or through a representative of the Union. Unlike the circumstances in which Plaintiff filed grievances, Nos. 63050, 63056, 62306,[6] Plaintiff did not file a grievance alleging that she had been subjected to a hostile work environment**

---

[6]   These numbers reference grievances submitted by Plaintiff over the last two years of her employment, filed regarding a written reprimand, her suspension, and her termination, respectively.  (Defs.' Answer No. 2 to Pl.'s First Set of Interrogatories, Ex. R, Doc. 47.)

> **and discriminatory conduct by her co-workers nor did Defendants have knowledge of any such "hostile work environment and discriminatory conduct."**

(Ex. R, Doc. 47.)

In Plaintiff's counter-statement, she asserts that she could not have filed a grievance related to a hostile work environment and discriminatory conduct because such a grievance "is not within the Collective Bargaining authority."   (Pl.'s Counterstatement to Defs.' Statement of Material Facts ¶ 27, Attach. 1, Doc. 60.)  However, Article 36.1 of the Collective Bargaining Agreement ("CBA") between Susquehanna County Prison and Teamsters Local 229 contains an anti-discrimination clause stating: "The County and the Union agree not to discriminate against any employee on the basis of race, creed, color, sex, age, national origin, non-job related handicap or disability, Union membership or political affiliation."  (Ex. A-2, Doc. 47.)  Violation of this provision may be grieved, as provided in Article 20.1 of the CBA:

> Should any dispute arise as to an alleged breach or violation, or as to the interpretation, application, meaning or of the alleged termination of this Agreement or sympathy strike, the employee or employees affected or the Union, shall process the grievance in accordance with the following procedure...."

(Ex. A-1, Doc. 47.)  As Defendants McGrail and Union stated in their Interrogatory Answer No. 4, the procedures outlined by the CBA require the aggrieved employee to initiate the grievance process.  Article 20.2 states:

> Step One:    The employee or employees affected shall take up the matter in writing with the Warden or his designee within seven (7) days of its occurrence, either directly or through a representative of the Union, in an attempt to effect a satisfactory settlement.

17

(*Id.*)

Though Plaintiff could have grieved a breach of the CBA's anti-discrimination clause, her counter-statement implies that she did not.  Nor does Plaintiff demonstrate that she otherwise requested the union take action in response to the alleged discrimination and hostile work environment she suffered.  The only evidence offered to support this position is an assertion by affidavit of her attorney that "[a]lthough the Plaintiff made continuous complaints about the hostile work environment and the discrimination she was subjected to neither the union nor the county conducted an investigation or took remedial action."  (Aff. of Peter G. Loftus ¶ 7, Attach. 2, Doc. 60.)  However, this affidavit fails to comply with Federal Rule of Civil Procedure 56(e), which requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  "The affidavit of a nonmovant's attorney who lacks first hand knowledge of the events does not satisfy the requirements of this rule."  *John Deere Indus. Equip., Co. v. Tomasella*, No. 90-cv-3064, 1990 U.S. Dist. LEXIS 17491, at *5-*6 (D.N.J. Dec. 18, 1990) (citing *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.*, 484 F. Supp. 1153, 1157 (S.D.N.Y. 1980)); *see also Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.").  Because it does not comply with Rule 56(e), the Court will not consider the affidavit.

    *4.    Summary*

Because Plaintiff does not allege facts sufficient to state a Title VII claim against

Defendant Union for retaliation or discriminatory termination, the Court will grant Defendants' motion to dismiss these claims.  Because Plaintiff fails to demonstrate a dispute of material fact that she requested and was refused action on part of the union, she cannot establish a hostile work environment claim.  The Court will therefore grant Defendant Union's motion in the alternative for summary judgment on this claim.

### V.   Count III - Age Discrimination

A.   Defendant McGrail

Count III of Plaintiff's amended complaint is a claim for discrimination based on age, in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Specifically, Plaintiff claims that, because of her age, Defendants retaliated against her, terminated her, and created a hostile work environment.  The ADEA presents a question of whether an individual, such as Defendant McGrail, can be held liable for discrimination under the statute.  The answer to this question is a topic of some disagreement between the various Circuit Courts of Appeals.  *See generally Miller v. Maxwell's Intern, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993).

While the Third Circuit Court of Appeals has not ruled directly on this issue, it has suggested, albeit through dicta, that it agrees with other Circuit Courts of Appeals' holdings that the ADEA does not provide for individual liability because individual employees are not employers within the meaning of the statute.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006);  *Miller,* 991 F.2d 583 (holding that dismissal of plaintiff's complaint for failure to state a claim was proper because defendants, employees of a large corporation, were sued in their individual capacities); *see generally Horwitz v. Bd. of Educ. of Avoca Sch.*

19

*Dist. No. 37,* 260 F.3d 602, 610 (7th Cir. 2001); *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674 (5th Cir. 2001); *Smith v. Lomax,* 45 F.3d 402, 403 (11th Cir. 1995); *contra Hamilton v. Rodgers*, 791 F.2d 439, 442-43 (5th Cir. 1986), *limited by*, *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir.1990).

In the Third Circuit Court of Appeals Decision in *Hill*, the plaintiff brought an ADEA claim against his municipal employer for constructive discharge by the municipality's mayor. 455 F.3d at 246.  The court noted that although the plaintiff did not bring an ADEA claim against the mayor, he could not have brought such a claim because the ADEA does not provide for individual liability.  *Id*.

The Third Circuit Court of Appeals also ruled that Title VII does not provide for individual liability.  *Kachmar,*109 F.3d at 184.  The *Hill* Court relied on this case to support its dicta regarding the ADEA's prohibition of individual liability; the court stated that in many ways Title VII is a parallel statute to the ADEA, and thus, it makes sense to interpret both statutes in a similar fashion.  *Hill*, 455 F.3d at 246.  This reasoning is important because such reasoning has been used by other Circuit Courts of Appeals in determining that individual liability does not exist under the ADEA.  *See Miller*, 991 F.2d at 583.  Furthermore, all U.S. District Courts in Pennsylvania agree that the ADEA does not provide for individual liability. *See Heinz v. Belcan Engineering Corp.*, No. 95-cv-0615, 1995 U.S. Dist. LEXIS 15705 (W.D. Pa. Aug. 16, 1995); *Pierce v. Phila. Housing Auth.*, No. 94-cv-4180, 1995 U.S. Dist. LEXIS 10591 (E.D. Pa. Jul 26, 1995); *Perepchuck v. Friendly's Ice Cream Corp.*, No. 97-cv-1988, 2000 WL 1372876, at *4 (M.D. Pa. Mar. 28, 2000) (finding that due to the parallel structure of Title VII and the ADEA and a large body of convincing precedent from various circuits, the

ADEA does not provide for individual liability).  Therefore, in reliance on this strong body of precedent and Defendant McGrail's status as an individual defendant, this Court will dismiss Count III's claim for age discrimination under the ADEA as to Defendant McGrail.

    B.    <u>Teamsters Local 229</u>

Count III also brings a claim for age discrimination against Defendant Union, alleging retaliation, discriminatory termination, and a hostile work environment.  Plaintiff's allegations relating to age discrimination are identical to those for her gender discrimination claim.  The ADEA's provisions on unlawful employment practices by employers and labor organizations mirror[7] the language of Title VII.  29 U.S.C. §§ 623(a), (c).  The ADEA's anti-retaliation provision also mirrors that of Title VII and the two have the same requirements to establish a *prima facie* case of retaliation. 29 U.S.C. § 623(d); *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005) (giving prima facie retaliation test under ADEA and PHRA); *see also Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir.), *cert. denied*, 537 U.S. 824 (2002) (noting that precedent interpreting the ADEA or Title VII anti-retaliation provision is equally relevant to interpretation of the other).  Based on the same analysis applied to Plaintiff's gender discrimination claim above, the Court will dismiss her claims based on retaliation and termination.

The Court has found no case applying the above-cited test to determine when a union may be liable for a hostile work environment in the ADEA context.  However, the hostile work environment analysis under Title VII and the ADEA for claims against employers is

---

[7]    The ADEA does, however, contain an additional unlawful employer employment practice not included in Title VII which is not relevant to this case.  29 U.S.C. §§ 623(a).

substantially similar.  *Beaubrun v. Thomas Jefferson Univ.*, 578 F. Supp. 2d 777, 783  n. 8

(E.D. Pa. 2008).   Consistent with the general proposition that interpretations of one apply

equally to the other, there is no reason to believe that the test would be limited to Title VII

claims.   *See Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995) ("we

routinely use Title VII and ADEA caselaw interchangeably, when there is no material

difference in the question being addressed").   As the evidence presented in support and

opposition to summary judgment on Plaintiff's ADEA claim is identical to her Title VII claim,

the Court applies the same analysis and will grant summary judgment.

## VI.     Count V - Conspiracy

Count V of Plaintiff's amended complaint alleges a state law claim of civil conspiracy.

The elements of a civil conspiracy under state law are very similar to those of a civil

conspiracy under § 1985(3).   To state a cause of action for civil conspiracy under

Pennsylvania law, plaintiff must allege: (1) a combination of two or more persons acting with

a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an

unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual

legal damage.  *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir.

2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).

It is not clear from the amended complaint on what unlawful act Plaintiff bases her

claim.   However, she argues in her brief that all Defendants conspired to violate her rights

under Title VII and the ADEA.  (Pl.'s Br. in Opp'n 10.)  Because these underlying claims will

be dismissed, a civil conspiracy claim based on them cannot stand.  *See Goldstein v. Phillip*

*Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) ("Absent a civil cause of action for a

particular act, there can be no cause of action for civil conspiracy to commit that act.")  This claim will therefore be dismissed.

### VII.   Count VI - Intentional Infliction of Emotional Distress

Count VI of Plaintiff's amended complaint raises a state law claim for intentional infliction of emotional distress.  Pennsylvania courts recognize a tort for intentional infliction of emotional distress.  *See, e.g., Bartanus v. Lis*, 480 A.2d 1178, 1184 (Pa. Super. Ct. 1984).  In order to recover for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) which was either intentional or reckless; and (3) which caused severe emotional distress.  *Wisniewski v. Johns-Manville Corp*., 812 F.2d 81, 85 (3d Cir. 1987) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)).  Outrageous conduct is that which goes beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.  *Id*. (citing *Jones v. Nissenbaum, Rudolph, & Seidner*, 368 A.2d 770, 773 (Pa. Super. Ct. 1976) (citations omitted)).  The Court must determine, in the first instance, whether the alleged conduct could reasonably be regarded as so extreme and outrageous as to permit recovery.  *Jones*, 368 A.2d at 774.

The Third Circuit Court of Appeals has stated "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co*., 861 F.2d 390, 395 (3d Cir. 1988) (citing *Rinehimer v. Luzerne County Comty. College*, 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)).  Dismissal alone cannot provide the basis for recovery.  *Id*.  As the Cox court observed:

> [C]ourts applying Pennsylvania law have failed to find conduct outrageous ... even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult ... Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.

*Id.* at 395-96 (citations omitted).  As one Third Circuit district court observed, "[c]ourts routinely reject claims of intentional infliction of emotional distress which arise out of allegedly improper employment practices, including cases of unlawful discrimination." *Timm v. Manor Care, Inc.*, No. 06-cv-0152, 2006 U.S. Dist. LEXIS 11342, at *17-*18 (W.D. Pa. Mar. 20, 2006) (citing cases); *see also Belverena v. Cent. Parking Sys., Inc.*, No. 05-cv-4364, 2005 U.S. Dist. LEXIS 25911, at *7 (E.D. Pa. Oct. 31, 2005) (outrageousness standard not met where plaintiff alleged he was set up by employer, wrongfully accused of stealing, and fired because of his age).

Here, Plaintiff alleges she was harassed by supervisors and co-workers during the course of her employment with the prison.  (Second Am. Compl. ¶ 18.)  She alleges that Defendants collectively allowed the harassment to continue and indeed encouraged the treatment.  (*Id*. ¶¶ 18-22.)  She further alleges that Defendants believed she passed information regarding a prisoner's death to the deceased's attorney and, in response, began manufacturing reasons to discipline and ultimately terminate her.  (*Id.* ¶¶ 23-29.)  While such actions are certainly offensive, they do not rise to level of those cases where courts have found conduct so outrageous as to permit recovery for intentional infliction of emotional distress.  This claim will therefore be dismissed.

24

## VIII.   Count VII - Wrongful Discharge

Count VII of Plaintiff's amended complaint raises a state law claim for wrongful discharge.  This Court has previously observed that, "under Pennsylvania law an employee represented by a labor union and covered by a collective bargaining agreement cannot maintain such cause of action." *Raczkowski v. Empire Kosher Poultry, Inc.*, No. 04-cv-0312, 2005 U.S. Dist. LEXIS 45853, at *6 (M.D. Pa. May 27, 2005); *see also Harper v. Am. Red Cross Blood Servs.*, 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001) ("Union-represented employees under a collective bargaining agreement cannot maintain a tort action for wrongful discharge when the terms of the collective agreement would otherwise protect the employee from discharge without proper cause.").  A cause of action for wrongful discharge exists, in certain circumstances, for non-contractual employees. *Harper*, 153 F. Supp. 2d at 271.  "This distinction exists because, a union-represented employee, unlike an at-will employee, can contest his dismissal through the grievance procedure outlined in his collective bargaining agreement."  *Id.*  As Plaintiff was represented by a union and covered by a collective bargaining agreement, this claim will be dismissed.

## IX.   Count VIII - Pennsylvania Human Relations Act

### A.   Teamsters Local 229

Plaintiff's final Count raises claims for age and gender discrimination under the PHRA. Like its federal counterparts, the PHRA makes unlawful gender and age-based discriminatory termination and harassment, and retaliation. *See generally* 43 Pa. Cons. Stat. § 955.  These claims will be dismissed as to Defendant Union based on the above analysis of those statutes.  *See Fogleman*, 283 F.3d at 567 ("[T]he PHRA is to be interpreted as identical to

federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (PHRA claims may be treated coextensively with Title VII and ADEA claims).

B.  Defendant McGrail

Plaintiff also raises her PHRA claims against Defendant McGrail and argues that the act, unlike its federal counterparts, specifically provides for individual liability.  As the Third Circuit Court of Appeals has explained:

> Like Title VII [and the ADEA], the definition of an employer under the PHRA cannot be construed to include "employees;" indeed, "employee" is defined as a wholly separate term under the Act.  *See* 43 Pa. Cons. Stat. Ann. § 954(b) & (c). The employment discrimination provision of the PHRA declares only that "any employer" may be held liable.  *See* 43 Pa. Cons. Stat. Ann. § 955(a).
>
> A different section of the PHRA, however, contemplates liability that extends beyond that of Title VII [and the ADEA].  Section 955(e) forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...."  43 Pa. Cons. Stat. Ann. § 955(e).

*Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996).  Thus, it has been held that "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998). "Direct incidents of harassment by non-supervisory co-employees are not covered by § 955(e) ... Supervisory employees, however, may be held liable ... on the theory that only supervisors can share the discriminatory purpose and intent that is required for aiding and

abetting." *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005) (citations omitted).

Here, Plaintiff's amended complaint gives no indication that Defendant McGrail is a supervisory employee of the prison.  Rather, he is specifically identified as the business representative for Teamsters Local 229 and his part in the events described are linked to this role.  (Second Am. Compl. ¶¶ 18, 21.)  As the Court will dismiss Plaintiff's PHRA age and gender discrimination claims as to Defendant Union, Defendant McGrail cannot be liable on an aiding and abetting theory where there is no underlying liability.  Plaintiff's PHRA claims will be dismissed as to Defendant McGrail.

## CONCLUSION

For the foregoing reasons, this Court will grant the Motion to Dismiss or for Summary Judgment of Defendants McGrail and Teamsters Local 229.  (Doc. 47.)

An appropriate Order follows.

March 30, 2009                                   /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHERYL A. SLATER,

    Plaintiff

       v.

SUSQUEHANNA COUNTY, et al,

    Defendants.

NO. 3:07-CV-2304

(JUDGE CAPUTO)

## ORDER

**NOW**, this <u>30th</u> day of March, 2009 **IT IS HEREBY ORDERED THAT**:

(1)    The Motion of Defendants Teamsters Local 229 and Jack McGrail to Dismiss Plaintiff's Second Amended Complaint or for Summary Judgment (Doc. 47) is **GRANTED.**

(2)    Defendants Teamsters Local 229 and Jack McGrail are **DISMISSED** from this action.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge