# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERYL L. SLATER,<br><br>Plaintiff,<br><br>v.<br><br>SUSQUEHANNA COUNTY, et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:07-CV-2304<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court is the defendants' motion for summary judgment. (Doc. 77.) For the reasons explained below, summary judgment will be granted in favor of the defendants on all of the plaintiff's federal claims. The remaining state law claims will be dismissed without prejudice.

## **I. Background**

At the time of the events giving rise to this action, Cheryl Slater was employed as a corrections officer at the Susquehanna Correctional Facility and was fired.

Following her termination, Slater filed her second amended complaint against defendants, two of whom have been dismissed. The remaining defendants are the county, the correctional facility, the prison board, and two wardens. Slater alleges that she was retaliated against for exercising her First Amendment rights, that she suffered age and gender discrimination, and that this alleged retaliation and discrimination occurred pursuant to a conspiracy. She also brings state law claims of civil conspiracy, intentional infliction of

1

emotional distress, wrongful discharge, and violation of the Pennsylvania Human Relations Act.

## II. Discussion

**A. Legal Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

2

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B. Slater's Reporting of Alleged Misconduct is Not Protected Speech**

In Counts I and II of the second amended complaint, Slater brings First Amendment claims. Slater alleges that the defendants retaliated against her for exercising her First Amendment rights to free speech. The second amended complaint broadly states that she was retaliated against for "reporting conduct which placed the prisoner, the prisoners and Correctional Officers in jeopardy for their safety, well-being, personal and physical integrity." (Doc. 46.) This appears to refer to an incident in February 2004 in which Slater was presented with a copy of the rules and regulations for correctional officers and asked to sign a form acknowledging her receipt and understanding of the regulations. According to Slater's deposition testimony, she initially refused to sign the form because she felt that the rules were neither being followed nor enforced. She was suspended as a result of her refusal

3

to sign the acknowledgment form. She conferred with a representative from her union, who instructed her to sign the form under protest. She did so. She then returned to work, and was sent to see a psychiatrist. She appears[1] to contend that she was retaliated against for her critical statements.

Claims of First Amendment retaliation are subject to a three-step burden-shifting analysis:

> First, the employee must show that the activity is in fact protected. Second, the employee must show that the protected activity "was a substantial factor in the alleged retaliatory action." Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct.

*Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (internal citations omitted). The first step presents a question of law for the court, while the second and third steps present questions of fact. *Id.* at 127.

Employee speech may be protected when "it addresses a matter of public concern and the 'employee's interest in the speech outweighs' the employer's countervailing interest 'in promoting workplace efficiency and avoiding workplace disruption.'" The Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S 410, 422 (2006), held that an employee's speech is protected only when it touches on an issue of public concern that is a "contribution[ ] to the civic discourse," and "retain[s] the prospect of constitutional protection" for the employee. In *Garcetti*, a deputy district attorney relayed concerns to a supervisor about what he perceived to be misrepresentations in a warrant. *Id.* at 414. He claimed that he was

---

[1] Slater does not specifically point out exactly which communications she faced retaliation for, nor does she point to the evidence in the record. Instead, her briefing refers to her having "report[ed] conduct which placed the prisoners and correctional officers in jeopardy for their safety, well being, personal and physical integrity." (Doc. 90 at 8.)

4

subjected to retaliation based on his criticisms of the warrant. *Id.* at 415. In holding that these criticisms were not protected speech, the Court noted that the attorney did not speak *as a citizen* on a matter of public concern; he instead spoke in the course of his employment. *See id.* at 421. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Underlying this holding is the rationale that "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

The Third Circuit applied *Garcetti* in *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007). In *Foraker*, the court of appeals held that *Garcetti* precluded the First Amendment claims of police officers who were disciplined for complaining to a State Auditor about hazardous conditions at a firing range. *Id.*

This case presents a situation similar to that in *Foraker.* When presented with a copy of facility rules and asked to sign an acknowledgment form, Slater refused and complained that rules were ignored. As her suspension shows, her acknowledgment of understanding these regulations was necessary for her to continue working. Her criticisms were therefore not protected speech under *Garcetti*, and thus her First Amendment claims fail. Therefore, summary judgment in favor of the defendants is appropriate on Counts I and II of the second amended complaint, insofar as Count II brings a claim of civil conspiracy to engage in retaliation for the exercise of Slater's First Amendment rights.

**C. Age and Gender Discrimination**

Slater brings claims for age and gender discrimination under the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964. The defendants argue that Slater was terminated as a result of two incidents. The first incident stemmed from Slater improperly allowing an armed individual into the facility; the second incident involved Slater allegedly disposing of contaminated gloves in an improper receptacle. Slater disputes the truth of the allegations: she claims she was relieved on a bathroom break when the armed individual entered, and she further claims that she properly disposed of her gloves. She does not dispute, however, that other guards told the warden substantially the same story of misconduct, and that she received letters detailing her alleged misconduct as the reason for imposing discipline. For purposes of summary judgment, the facts are viewed in the light most favorable to Slater: thus, her actual innocence is presumed.

**1. Age Discrimination**

Courts examine an ADEA claim under a modified version of the *McDonnell Douglas* burden-shifting analysis. *See Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The plaintiff first must establish her prima facie case of age discrimination. Once the plaintiff does so, the defendant bears the burden of production to provide evidence of a non-discriminatory reason for the adverse employment action. After a defendant produces such evidence, the burden shifts back to the plaintiff to proffer evidence from which a reasonable trier of fact could (1) disbelieve the employer's articulated legitimate reason, or (2) conclude that age discrimination was more likely than not the true motivation behind the employer's action. *Id.*

at 234–35.

A prima facie case of age discrimination requires that a plaintiff show (1) she was at least forty years old, (2) she was terminated from employment, (3) she was qualified for the job from which she was fired, and (4) she "was replaced by a sufficiently younger person to create an inference of age discrimination." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 n.4 (3d Cir. 2006) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002)).

Here, the plaintiff clearly fails to meet the fourth prong. There is no evidence that Slater, who was over forty at the time of her termination, was replaced by a sufficiently younger person. While her Exhibit B to her opposition for summary judgment provides a list of employees, their ages, and their employment status, there is no explanation or statistical analysis of what this list shows, and it leaves many questions unanswered–*i.e.*, is it a comprehensive list of all employees at the facility? As of what date? Moreover, it does not even appear that any inference of age discrimination can be drawn from the list. Of the eight terminated employees, four were in their twenties, and four in their fifties. Thus, Slater fails to establish a prima facie case of age discrimination.

Even assuming, *arguendo*, that Slater established a prima facie case, her age discrimination claim would still fail because has not proffered evidence from which a reasonable factfinder could disbelieve her employer's articulated reasons or find age discrimination. In her deposition, Slater herself indicated that she "didn't know" whether she believed that she had been fired because of her age or gender. (Doc. 92, Ex. A at 28). Also, although Slater claims she is innocent of wrongdoing, she does not dispute that several other correctional officers testified that she did commit misconduct. In her deposition, she was asked, "[d]o you believe that [the warden] fired you for any reason except that he believed

7

your fellow correctional officers?" She responded: "I don't know." *Id*.

Thus, Slater has failed to rebut the defendants' nondiscriminatory reasons for firing her and show age discrimination. Thus, summary judgment in favor of the defendants on Count III of the second amended complaint is appropriate.

**2. Gender Discrimination**

At Count IV of the second amended complaint, Slater brings a claim for hostile work environment and gender discrimination under Title VII of the Civil Rights Act of 1964. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-(2)(a)(1).

**(a) Hostile Work Environment**

Subjecting an employee to a discriminatorily hostile environment can so change the "terms, conditions, or privileges of employment" as to fall within the ambit of Title VII. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). However, only conduct that a reasonable person would find hostile or abusive is actionable. *Id.* The plaintiff must show that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,'" that was "sufficiently severe or pervasive" to alter the conditions of employment. *Id.* (quoting *Meritor*, 477 U.S. at 65).

Nowhere in her brief does Slater point to specific incidents of intimidation or ridicule that she claims happened by reason of her sex. However, she submits evidence of two postcards, which appear to have been sent to the facility by a fellow corrections officer out on vacation. Slater alleges these were placed in her work area. The postcards feature

8

middle-aged women sunbathing or frolicking on the beach, and are clearly meant to be a self-deprecating gesture of the sender. No reasonable factfinder could find that they so permeated the workplace with discriminatory ridicule as to alter the conditions of employment. Indeed, looking at the totality of the plaintiff's insinuations and allegations, including the Secret Sister society, no reasonable fact-finder could find hostile or abusive sex discrimination. Slater's hostile environment claim therefore fails.

**(b) Discriminatory Firing**

To make out a prima facie case of sex-based termination under Title VII, Slater must establish that (1) she is a member of a protected class; (2) she qualified for the position in question; (3) she was terminated; (4) the circumstances of her termination give rise to an inference of unlawful discrimination. *See Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir. 1999). The purpose of the prima facie test is to discern "whether the employer is treating 'some people less favorably than others because of their . . . sex.'" *Pivirotto*, 191 F.3d at 352 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

Slater fails to make out a prima facie case of gender discrimination. She fails to show how her termination gives rise to an inference of sex discrimination; indeed, as noted above, her own deposition testimony indicates that she does not believe that her sex played any role in her termination. (Doc. 92, Ex. A at 28.)

Even assuming Slater established a prima facie case, her sex discrimination claim would nonetheless fail because she does not demonstrate that the defendants' articulated nondiscriminatory reasons for firing her "w[ere] merely a pretext for unlawful discrimination." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000). A plaintiff

carries a "difficult burden" in demonstrating pretext. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). To establish pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Slater fails to demonstrate pretext. She acknowledges that she has no information that the warden fired her for any reason other than the testimony of her fellow officers that she violated facility protocol. (Doc. 92, Ex. A at 28.) Thus, her gender discrimination claim fails.

### (c) Conclusion

For the reasons explained in this section, Slater's age and gender discrimination claims at Counts III and IV of the second amended complaint fail, and summary judgment in favor of the defendants is appropriate. Additionally, to the extent that Count II brings a claim for civil conspiracy to discriminate, summary judgment in the defendants' favor will be granted.

## D. State Law Claims

The remaining counts in the second amended complaint are all state law claims. At Count V, Slater brings a claim for a civil conspiracy under Pennsylvania law; at Count VI, she brings a claim for intentional infliction of emotional distress; at Count VII, she brings a claim for wrongful discharge; and at Count VIII, she brings a claim under the Pennsylvania Human Rights Act.

Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over state

10

law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction over such a claim, however, when it "has dismissed all claims over which it had original jurisdiction." *Id.* at § 1367(c)(3). Absent extraordinary circumstances, "jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984). Such extraordinary circumstances exist when "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for exercising supplemental jurisdiction. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

Here, the defendants' motion for summary judgment will be granted with respect to all of Slater's federal claims. The parties do not argue that extraordinary circumstances justifying the exercise of supplemental jurisdiction exist. The Court therefore declines to exercise supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181–82 (3d Cir. 1999).

### III. Conclusion

For the reasons explained above, summary judgment will be granted in favor of the defendants on Counts I-IV of Slater's second amended complaint. The state law claims at Counts V-VIII will be dismissed without prejudice. An appropriate order follows.

February 15, 2011  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHERYL L. SLATER, | |
| Plaintiff, | NO. 3:07-CV-2304 |
| v. | |
| SUSQUEHANNA COUNTY, et al., | (JUDGE CAPUTO) |
| Defendants. | |

## **ORDER**

**NOW**, this 15th day of February, 2011, **IT IS HEREBY ORDERED** that:

(1) The defendants' motion for summary judgment (Doc. 77) is **GRANTED IN PART and DENIED IN PART**.

(2) Judgment shall be entered in favor of the defendants and against the plaintiff on the claims in Counts I-IV of the second amended complaint.

(3) The Court declines to exercise supplemental jurisdiction over the claims in Counts V-VIII of the second amended complaint, and these claims are **DISMISSED** without prejudice.

(4) The clerk of court is directed to mark this matter **CLOSED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge